1

2

3

4

5

6

7

8                       IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10   NORMAN HUBBS,

11              Plaintiff,                      No. CIV S-04-2256 GEB DAD P

12        vs.

13   STEVEN MAYBERG,                        <u>ORDER AND</u>

14              Defendant.                   <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16          Plaintiff is a civil detainee proceeding pro se with this civil rights action.  The

17   matter is before the court on defendant's motion for summary judgment pursuant to Rule 56 of

18   the Federal Rules of Civil Procedure.

19                       PROCEDURAL HISTORY OF THE CASE

20          Plaintiff was confined in Atascadero State Hospital at the times relevant to this

21   action, and his complaint concerns fees imposed for copying patient records at that institution.

22   On November 5, 2004, the undersigned granted plaintiff's application to proceed in forma

23   pauperis and authorized service of the complaint on defendant Mayberg, Director of the

24   California Department of Mental Health.

25          On December 22, 2004, defendant moved to dismiss the action pursuant to Rules

26   12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  In findings and recommendations

                                            1

filed on July 29, 2005, the undersigned recommended that the motion be denied.  The findings and recommendations were adopted in full on September 15, 2005.

Defendant filed his answer to plaintiff's complaint on September 22, 2005.  A discovery order was issued on October 26, 2005.  Pursuant to the court's January 9, 2006 order, both parties filed timely status reports.  The court has deferred the issuance of a scheduling order pending disposition of defendant's summary judgment motion.

PLAINTIFF'S COMPLAINT

Plaintiff alleges that defendant Mayberg has used the authority of his office as director of the California Department of Mental Health (Department) to take money from the trust accounts of plaintiff and other state hospital patients in violation of the California Constitution and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.  Plaintiff alleges that an unconstitutional taking occurred after he submitted a written request for a copy of a medical record in his patient's file.  Plaintiff states that he made the request on a standard form on which he agreed to pay $.10 per page, the fee previously charged by the Department for copy services pursuant to California Civil Code § 1798.33. Plaintiff alleges that the Department charged him $.25 per page for a copy of the document and withdrew funds from his trust account accordingly.  Plaintiff contends that the Department increased the fee from $.10 to $.25 without promulgating or posting the change in compliance with the state's Administrative Procedures Act.

Plaintiff used the patient complaint system to challenge the withdrawal of funds from his trust account in excess of $.10 per page.  Department officials refused to issue a refund, citing California Health and Safety Code § 123100 and the Department's Special Order # 501.1. Plaintiff acknowledges that § 123100 of the Health and Safety Code and Special Order # 501.1 authorize a maximum fee of $.25 per page for copying, and he concedes that § 1798.33 of the California Civil Code permits state agencies to enact a fee in excess of $.10.  He contends, however, that the Special Order misstates and inaccurately cites state statutes as a basis for

1  justifying the increased fee.  He argues that California Health and Safety Code § 123100 merely

2  permits, but does not require, a statutory fee in excess of the 10 cents per page maximum

3  mandated by California Civil Code § 1798.33 and that the latter statute controls the fee that may

4  be charged by the Department for copying patient records.

5           In a section of plaintiff's complaint titled "Declaration" but not declared to be true

6  under penalty of perjury, plaintiff alleges that he was never informed by any means that the

7  Department had raised the cost of copies to $.25 per page or that the Department would deduct

8  such an amount from his trust account for copies he requested.  The court notes that the alleged

9  lack of notice is contradicted by attachments to plaintiff's complaint.  A copy of a blank Form

10 GA 20.1 HIMD with a revision date of January 2002 indicates a charge of $.10 per page for

11 photocopies, but a copy of the Form GA 20.1 HIMD completed by plaintiff on August 11, 2004,

12 bears a revision date of July 2004 and indicates a charge of $.25 per page.  It appears that

13 plaintiff attempted to alter the amount on the form by writing "10" over "25."

14          Plaintiff seeks a refund of all monies taken from his trust account in excess of

15 $.10 per page for copies; $50.00 for interest on the excess fees and for loss of use of his funds;

16 unspecified costs and fees in the amount of $1,500.00; punitive damages in the amount of

17 $2,500.00; attorney fees and costs; an order requiring the Department to cease charging a copy

18 fee in excess of $.10 per page; and an order requiring the Department to implement all rules and

19 regulations in accordance with state law.

20                              THE PARTIES' ARGUMENTS

21 I.  Defendant's Motion

22          Defendant seeks judgment in his favor on the grounds that (1) plaintiff's claim for

23 damages cannot be supported because defendant did not cause money to be taken from plaintiff's

24 trust account, either directly or by promulgation of policy, and did not personally participate in

25 any deprivation of plaintiff's constitutional rights, (2) plaintiff's claim for  injunctive relief is

26 moot because the current policies of the department are consistent with Civil Code § 1798.33,

1  and (3) any state law claims should be dismissed absent a viable claim under § 1983.  Defendant

2  contends that the undisputed material facts establish his lack of personal participation in any

3  federal constitutional violation, show that the Department's current policy is consistent with the

4  $.10 per page copy fee set forth in Civil Code § 1798.33, and demonstrate that the excess charges

5  made against plaintiff's trust account were redeposited in plaintiff's account with interest.

6          Defendant's statement of undisputed facts is supported by the declarations of

7  defendant Mayberg and of John Rodriguez, Deputy Director of the Long Term Care Services

8  Division of the Department.  The Rodriguez declaration includes three exhibits:  Exhibit A is a

9  copy of Special Order No. 501.1, effective September 8, 2003, on the subject of state hospital

10  patients' right of access to protected health information, including the fee to be charged per

11  photocopy page; Exhibit B is a copy of Special Order No. 501.02, effective March 24, 2005, on

12  the subject of right of access to protected health information of the individual served, including

13  the fee to be charged per photocopy page; and Exhibit C is a copy of Special Order No. 501.03,

14  effective July 29, 2005, on the subject of the individual's right of access to protected health

15  information, including the fee to be charged per photocopy page.

16          Defendant Mayberg declares as follows:  (1) he is Director of the California

17  Department of Mental Health and served in that position at all times relevant to this action; (2) he

18  has the authority to delegate the promulgation of policies affecting the day-to-day operations of

19  state hospitals within his jurisdiction to the Department's deputy director in charge of long term

20  care services; (3a) at the relevant times, defendant delegated the promulgation of all policies

21  affecting the copying of medical files at state hospitals to Deputy Director Rodriguez and state

22  hospital administrators; (3b) defendant himself did not promulgate any policies, procedures, or

23  practices concerning copying fees for medical records by special order or otherwise and was not

24  directly involved with the promulgation of copying fee practices at Atascadero State Hospital;

25  (4a) defendant delegated the authority to issue special orders governing hospital operations to

26  Rodriguez; (4b) defendant did not intervene in the process of issuing special orders; (4c) funds

4

1   were taken from plaintiff's trust account pursuant to special orders and administrative directives;

2   (4d) defendant was not involved with the training of staff at Atascadero State Hospital regarding

3   fees charged for copying medical records; (5) defendant was not aware of plaintiff's written

4   request for a copy of medical records from his patient's file or of plaintiff's request for a refund

5   of excess copying fees until defendant was served with plaintiff's complaint in this action.

6           Deputy Director Rodriguez declares as follows:  (6a) he is the Deputy Director of

7   the Department's Long Term Services Division and has held that position since May 1997; (6b)

8   Rodriguez is responsible for the administration of the state hospital system under the

9   Department's jurisdiction; (7a) Rodriguez has the authority to issue special orders on behalf of

10  the Department; (7b) special orders are used to ensure that state hospitals comply with state law,

11  regulations, court decisions, and rulings, and state hospitals in turn develop their own local

12  administrative directives to comply with the Department's special orders; (7c) special orders are

13  reviewed and revised periodically; (7d) the Department's Hospital Operations Branch begins the

14  revision process for special orders by analyzing revisions to statutes and regulations as well as

15  court rulings; (7c) the draft of a revised special order is forwarded to the executive directors of

16  the state hospitals for local review, and the draft is distributed throughout each hospital for

17  evaluation of the impact of the proposed order on the operation of the facility; (7d) each hospital

18  forwards its specific input to the Hospital Operations Branch, which incorporates any changes

19  into a final draft special order; (7e) the final draft special order is presented to the Executive

20  Directors Council for approval; (7f) if the Executive Directors Council approves a revised special

21  order, the revised special order is signed by the deputy director and prepared for distribution; (7g)

22  the revision of special orders is a standing agenda item at the monthly meeting of the Executive

23  Directors Council; (8a) Special Order No. 501.1 outlines an individual's right of access to his or

24  her protected health information and the responsibilities of the state hospital to provide such

25  information; (8b) Special Order No. 501.1 describes the procedure for copying patient medical

26  records and the 25 cent per page fee to be charged for such service; (9a) Rodriguez signed

1   Special Order No. 501.1 after consulting with staff counsel, state hospital administrators, and his

2   own staff; (9b) defendant Mayberg was not consulted and was not involved in the development

3   and implementation of Special Orders No. 501.1, No. 501.02, and No. 501.03; (10) Special Order

4   No. 501.02, which revised Special Order No. 501.1, became effective on March 24, 2005, and

5   also contained a $.25 per page fee for copying patient medical records; (11) staff at Atascadero

6   State Hospital followed administrative directives and procedures as defined in Special Order No.

7   501.02 at all times while it was in effect, in responding to requests for medical record copying

8   and in collecting fees from patients' trust accounts; (12) Rodriguez received plaintiff's August

9   27, 2004 letter requesting a copy of the Department's administrative directive authorizing

10  copying fees at 25 cents per page, asserting that he had been charged for a page he did not request

11  and had been charged more than the 10 cent per page maximum allowed by § 1798.33, and

12  asking that the amount charged in excess of 10 cents per page be refunded; (13a) Rodriguez sent

13  plaintiff a copy of Special Order No. 501.1 and referred plaintiff to hospital staff regarding the

14  amount charged to plaintiff's trust account for a copy he did not request; (13b) Rodriguez

15  indicated to plaintiff that he understood plaintiff would be reimbursed for the page he had not

16  requested if he returned the page with a formal request for reimbursement; (14a) on October 5,

17  2004, fees were redeposited in plaintiff's trust account for charges in excess of 10 cents per page

18  plus interest at ten percent, for a total of $2.01; (14b) interest was paid to plaintiff's account

19  despite the fact that it was not an interest bearing account; (14c) plaintiff filed this lawsuit on

20  October 25, 2004; (15a) Special Order No. 501.02 was revised by Special Order No. 501.03,

21  which became effective on July 29, 2005; (15b) Special Order No. 501.03 changed the copying

22  fee charge from 25 cents per page to 10 cents per page in compliance with § 1798.33; (15c)

23  Special Order No. 501.03 is the policy presently in effect at state hospitals under the

24  Department's jurisdiction, including Atascadero State Hospital.  Special Order No. 501.03

25  provides that "[a] fee of ten cents per photocopy page may be imposed when a request for copies

26  is made."  (Rodriguez Decl, Ex. C at 1.)

1          Defendant argues that his evidence shows that no genuine issue of material fact

2    exists as to plaintiff's claims.  Defendant asserts that plaintiff's claims for damages and

3    injunctive relief will not lie because defendant did not personally cause the alleged constitutional

4    violation either directly or through the issuance of a policy.  Defendant cites well established

5    federal law for the principle that supervisors are liable only for their own conduct and are not

6    liable for the actions of their subordinates on a theory of vicarious liability.  Defendant reasons

7    that his delegation of all relevant authority to the deputy director and hospital administrators, his

8    complete lack of personal involvement in the issue of fees charged for photocopies at state

9    hospitals, and his lack of knowledge of plaintiff's claims until plaintiff's complaint was served

10   establish that he was not personally involved in the alleged constitutional violation and that there

11   is no causal connection between him and the alleged violation.  Defendant asserts that plaintiff

12   has been made whole by the redeposit to his account of the fees charged in excess of $.10 per

13   page and by revision of the Department's policy to comply with Civil Code § 1798.33.  Thus,

14   defendant concludes that there is no viable claim remaining for damages or injunctive relief

15   under § 1983 and that any supplemental state law claim should be dismissed.

16          With regard to punitive damages, defendant argues that exemplary damages can

17   be recovered from a defendant pursuant to § 1983 only if the plaintiff establishes that the

18   defendant acted oppressively, fraudulently, or maliciously.  Defendant cites well established

19   federal law describing the standard applicable to punitive damages and contends that it is evident

20   from the face of plaintiff' complaint that defendant did not act with reckless or callous

21   indifference to plaintiff's constitutional rights.  Citing state law, defendant argues further that an

22   award of punitive damages can be made only if there is an award of compensatory damages.

23          With regard to injunctive relief, defendant argues that such relief is an equitable

24   remedy subject to the court's discretion and that courts frequently decline to issue an order

25   where, as in this case, the defendant's voluntary cessation of the challenged conduct has made

26   the order unnecessary.  Defendant urges this court to decline to enjoin a policy that is no longer

in use.  Defendant also argues that injunctive relief should not be granted where the plaintiff

seeks review of past, completed actions or decisions that cannot be affected by the granting of

such relief, because in such cases there is no longer a present, actual controversy.  Defendant

concludes that plaintiff's request for an order requiring the Department to cease taking funds for

copy fees in excess of the amount allowed by § 1798.33 and also requiring the Department to

implement all rules and regulations in accordance with state law through the Administrative

Procedures Act and the Office of Administrative Law should be denied as moot because there are

no continuing adverse effects.

        Citing 28 U.S.C. § 1367(c)(3) and United Mine Workers v. Gibbs, 383 U.S. 715,

726 (1966), defendant requests that the court decline to exercise supplemental jurisdiction over

plaintiff's related state claim concerning procedures under the Administrative Procedures Act if

plaintiff's federal claims are all dismissed before trial.

II.  Plaintiff's Opposition

        Plaintiff states that defendant's motion dated January 24, 2006, was delivered to

him on February 8, 2006, giving him only three days to prepare opposition.  Plaintiff blames

defendant for the delay and contends that defendant caused the delay in order to shorten

plaintiff's time to oppose the motion.  Plaintiff asks the court to take notice of defendant's

citation to Local Rule 78-230(m), which plaintiff regards as implying that plaintiff is a prisoner.[1]

        Plaintiff asserts that there are misrepresentations in defendant's statement of

undisputed facts.  Plaintiff contends that defendant Mayberg has admitted that it is his duty to

---

        [1] Although Local Rule 78-230(m) is titled "Motions in Prisoner Cases," the text of the rule
refers to "cases wherein one party is incarcerated and proceeding in propria persona."  The court
applies Local Rule 78-230(m) to all cases in which the plaintiff is confined in an institution and
proceeding pro se.  On November 23, 2004, the undersigned ordered that specific motions filed in
this case, including motions to dismiss and motions for summary judgment, "shall be briefed
pursuant to Local Rule 78-230(m)."  (Order filed Nov. 23, 2004, at 3.)  When plaintiff failed to
oppose defendant's motion to dismiss in 2005, the undersigned called plaintiff's attention to the
requirements of the November 23, 2004 order and to Local Rule 78-230(m).  (Order filed Mar. 7,
2005, at 1-2.)  Defendant properly cited Local Rule 78-230(m) in his notice of motion.

make and promulgate department rules, regulations, and special orders, despite the fact that defendant attempts to evade culpability for unlawful rules and rules not properly promulgated under state administrative law by shifting the blame to the deputy director.  Plaintiff argues that the delegation of rule making responsibility to the deputy director does not absolve defendant of responsibility.  Although plaintiff does not dispute the substance of Nos. 1, 2, 3, 4, 7, 8, 10, 11, 12, and 13 of defendant's undisputed facts, he reiterates with regard to Nos. 2 and 3 that defendant is "still responsible."

Plaintiff disputes in part defendant's undisputed fact No. 5, in which defendant states that he was not aware of plaintiff's written request for a copy of medical records from his patient's file or of plaintiff's request for a refund of excess copying fees until he was served with plaintiff's complaint in this action.  Plaintiff states that on October 27, 2004, he sent a letter to the main office of the Department concerning the taking of excess funds for copies.  He contends that, if defendant was not advised of plaintiff's issue at that time, it was defendant's own fault for not staying advised of what his delegates were doing and for not reading his own mail.

Plaintiff disputes in part defendant's undisputed fact No. 6, in which John Rodriguez states that he is Deputy Director of the department's Long Term Services Division, has held that position since May 1997, and is responsible for the administration of the state hospital system under the department's jurisdiction.  Plaintiff denies that the deputy director's authority extends to bearing responsibility for administering the state hospitals.

Plaintiff disputes in part defendant's undisputed fact No. 9, in which Rodriguez states that he signed Special Order No. 501.1 after consulting with staff counsel, state hospital administrators, and members of his own staff and that defendant Mayberg was not consulted or involved in the development and implementation of Special Orders No. 501.1, No. 501.02, and No. 501.03.  Plaintiff argues that it was defendant's responsibility to be advised of all rules made on his behalf pertaining to the administration of his agency.

/////

1    Plaintiff disputes in part defendant's undisputed fact No. 14, in which Rodriguez

2   states that on October 5, 2004, fees were redeposited in plaintiff's trust account for charges in

3   excess of 10 cents per page plus interest despite the fact that it was not an interest bearing

4   account and stating that plaintiff filed this lawsuit on October 25, 2004.  Plaintiff asserts that

5   under the mailbox rule his complaint was actually filed on October 20, 2004, as shown by the

6   receipt attached to his opposition.  Plaintiff further argues that the overpaid fees were not

7   redeposited into his account until October 7, 2005, as shown by the trust account statement

8   attached to his opposition.  Plaintiff notes that his trust account statement shows that no refund

9   for copy fees was recorded on October 5, 2004, as claimed by defendant.  Plaintiff contends that

10   defendant's error in this regard is a blatant misrepresentation designed to make it appear that

11   plaintiff's lawsuit was vindictive and without merit when it was filed, despite the fact that

12   defendant refused to refund the excess fees until this court ruled against defendant.

13    Plaintiff states that he cannot admit defendant's undisputed fact No. 15 (stating

14   that Special Order No. 501.02 was revised by Special Order No. 501.03, which became effective

15   on July 29, 2005, that Special Order No. 501.03 changed the copying fee charge from 25 cents

16   per page to 10 cents per page in compliance with § 1798.33, and that Special Order No. 501.03 is

17   the policy presently in effect) because the first page of Special Order No. 501.03 was not

18   included with the copy of defendant's motion served on him.[2]

19    Plaintiff offers his own statement of fifteen undisputed facts.  Plaintiff's facts

20   concern the following:  (1) whether the Department's policy on photocopy fees is posted where it

21   can be seen or accessed by patients, (2) whether departmental rules and special orders are

22   available to or can be accessed by patients, (3) whether the Department implements rules,

23   regulations, and administrative directives in accordance with state law, (4) the applicability of

24

25    [2] The first page of Special Order No. 501.03 reflects that the order replaces 501.02, that the
    effective date is July 29, 2005, and that "[a] fee of ten cents per photocopy page may be imposed
26   when a request for copies is made."  Def.'s Mot. for Summ. J., Rodriguez Decl., Ex. C at 1.)

directives and special orders to clients and the public rather than employees of the department,
(5) whether the erroneous date of August 22, 2004, on the deputy director's letter responding to
plaintiff's August 27, 2004 letter somehow demonstrates that the Department was aware of its
violation of the law even before plaintiff called the violation to the Department's attention; (6)
the responsibility of the mail room at Atascadero State Hospital for delivering mail to hospital
residents; (7) whether the Department notified patients of an increase in copy fees prior to issuing
the revised Form GA 20.1 in July 2004; (8) whether the department issued a notice before
revising Form GA 20.1 again in 2005; (9) the practice at Atascadero State Hospital of demanding
prepayment of fees for health care records before the records are copied and provided to the
patient; (10) the Department's practice of requiring prepayment of fees for copies of medical test
results requested by patients despite state law requiring that copies be provided without a fee on
request by the patient on whom the test was performed; (11) the Department's requirement that a
Form GA 20.1 must seek review of the patient's medical file or identify the specific document
requested and the Department's requirement that the form be approved by the patient's treatment
team before the form will be sent to the records office; (12) the Department's refusal to accept or
honor other written requests or verbal requests for copies of patient records; (13) the policy that
only one Form GA 20.1 can be submitted in a 90 day period; (14) the fact that the Department's
process for requesting review of the file or specifying documents to be copied often takes thirty
days to complete, and an additional five days for the withdrawal of funds from the patient's trust
fund before copies are provided; and (15) if a person requests a copy of a specific record but
lacks funds to pay for copies, copies are not provided until the person's trust account contains
sufficient funds, as a result of which plaintiff has had to wait more than two weeks to obtain a
specific record he identified and requested.

      Plaintiff concludes that defendant's motion should be denied and that a directed
verdict should be entered granting plaintiff "all applicable relief."

/////

1    III.  Defendant's Reply

2              Defendant observes that the gravamen of plaintiff's opposition is that defendant's

3    delegation of rule-making responsibility to the deputy director does not absolve defendant of

4    responsibility for the rules implemented by his delegate and the enforcement of those rules.

5    Defendant asserts that plaintiff cannot establish liability for breach of a non-delegable duty to

6    oversee the Department's policies because there is no such duty and also because defendant's

7    evidence establishes his own lack of personal involvement in and/or knowledge of the alleged

8    constitutional violations.  Defendant notes that plaintiff does not contest the fact that his trust

9    account was made whole by the Department's reimbursement of the alleged excess copying fees,

10   with interest, but merely attacks the accuracy and motivation of defendant and his staff in

11   asserting the reimbursement as a defense.

12             Addressing plaintiff's response to defendant's statement of undisputed material

13   facts, defendant argues that plaintiff has failed to present specific facts with citations to

14   competent evidence demonstrating the existence of a genuine issue for trial.  Defendant contends

15   that the facts admitted by plaintiff are sufficient to negate any culpability of defendant in the

16   alleged constitutional violations.  Defendant reiterates his arguments concerning the mootness of

17   plaintiff's claims for damages and injunctive relief, and rejects plaintiff's assertion that

18   injunctive relief is still needed to end alleged illegal promulgation of special orders.  Citing

19   Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 107 (1984), defendant argues

20   that this court lacks jurisdiction to hear claims for injunctive relief based on alleged violation of

21   state administrative regulations.  With regard to an injunction concerning alleged constitutional

22   violations, defendant denies that there is any need for the court to address issues that are moot as

23   to the parties themselves and not likely to recur in the future.  Defendant concludes that he has

24   met his burden of demonstrating entitlement to summary judgment on the ground that there is no

25   genuine issue as to any material fact.

26   /////

1    In a separate document, defendant responds to plaintiff's statement of undisputed

2    facts.  Defendant objects to Nos. 1, 2, 3, 4, 6, 9, 10, 12, and 15 on the grounds that plaintiff failed

3    to cite competent evidence in support of these asserted facts and that the asserted facts are not

4    relevant to defendant's motion for summary judgment.  Defendant also objects to Nos. 5, 7, 8,

5    11, 13, and 14 on the ground of relevance.

6    STANDARDS FOR SUMMARY JUDGMENT PURSUANT TO RULE 56

7    Summary judgment is appropriate when it is demonstrated that there exists "no

8    genuine issue as to any material fact and that the moving party is entitled to a judgment as a

9    matter of law."  Fed. R. Civ. P. 56(c).  The moving party

10    always bears the initial responsibility of informing the district court
      of the basis for its motion, and identifying those portions of "the
11    pleadings, depositions, answers to interrogatories, and admissions
      on file, together with the affidavits, if any," which it believes
12    demonstrate the absence of a genuine issue of material fact.

13    Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

14    "[W]here the nonmoving party will bear the burden of proof at trial on a

15    dispositive issue, a summary judgment motion may properly be made in reliance solely on the

16    'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Summary

17    judgment should be entered, after adequate time for discovery and upon motion, against a party

18    who fails to make a showing sufficient to establish the existence of an element essential to that

19    party's case and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A]

20    complete failure of proof concerning an essential element of the nonmoving party's case

21    necessarily renders all other facts immaterial."  Id.  Summary judgment should be granted "so

22    long as whatever is before the district court demonstrates that the standard for entry of summary

23    judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

24    If the moving party meets its initial responsibility, the burden shifts to the

25    opposing party to establish that a genuine issue as to any material fact does exist.  See Matsushita

26    Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

1  existence of this factual dispute, the opposing party may not rely upon the allegations or denials

2  of its pleadings but is required to tender evidence of specific facts in the form of affidavits and/or

3  admissible discovery material in support of the contention that a dispute exists.  See Fed. R. Civ.

4  P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The party opposing summary judgment must show

5  that any fact in contention is material, i.e., a fact that might affect the outcome of the suit under

6  the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury

7  could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S.

8  242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630

9  (9th Cir. 1987); Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

10          In trying to establish the existence of a factual dispute, the party opposing

11  summary judgment need not establish a material issue of fact conclusively in his or her favor.  It

12  is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

13  parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the

14  "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see

15  whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P.

16  56(e) advisory committee's note on 1963 amendments).

17          The evidence of the party opposing summary judgment is to be believed, and all

18  reasonable inferences that may be drawn from the facts placed before the court must be drawn in

19  favor of the party opposing summary judgment.  See Anderson, 477 U.S. at 255; Matsushita, 475

20  U.S. at 587.  Inferences will not be drawn out of the air, however; it is the opposing party's

21  obligation to produce a factual predicate from which an inference may be drawn.  See Richards v.

22  Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

23  (9th Cir. 1987).  The opposing party "must do more than simply show that there is some

24  metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not

25  lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

26  Matsushita, 475 U.S. at 587 (citation omitted).

1    On November 23, 2004, the court advised plaintiff of the requirements for
2   opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See
3   Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d
4   409 (9th Cir. 1988).

5                                    ANALYSIS

6    Section 1983 requires that there be an actual connection or link between the
7   actions of each defendant and the deprivation alleged to have been suffered by the plaintiff.  See
8   Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362
9   (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the
10   meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or
11   omits to perform an act which he is legally required to do that causes the deprivation of which
12   complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

13    Supervisory personnel may not be held liable under § 1983 for the actions of their
14   employees under a theory of respondeat superior.  Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir.
15   1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  A supervisory official may be
16   held liable if he or she was personally involved in a deprivation of the plaintiff's rights or if there
17   is a sufficient causal connection between the supervisor's wrongful conduct and the alleged
18   violation of rights.  Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991);
19   Hansen v. Black, 885 F.2d 642, 645-46 (9th Cir. 1989).  A causal connection may be established
20   by showing that a supervisor set in motion a series of acts by others which the supervisor knew or
21   reasonably should have known would cause others to inflict a constitutional violation.  Ybarra v.
22   Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680-81 (9th Cir. 1984); Johnson, 588
23   F.2d at 743-44.

24    In the present action, plaintiff alleges that defendant used the authority of his
25   office to take money from the trust accounts of plaintiff and other state hospital patients in
26   violation of the Fourth, Fifth, and Fourteenth Amendments and in violation of state law.  Among

15

1   the relief sought by plaintiff is a refund of excess fees with interest and an injunction requiring

2   the Department to cease charging a copy fee in excess of $.10 per page.  At screening, the

3   undersigned found the allegations of the pleading and the relief sought sufficient to link

4   defendant Mayberg to the alleged deprivation of rights.

5          Having considered all of the briefing filed in connection with defendant's motion

6   for summary judgment, as well as the entire file, the undersigned finds that defendant has shown

7   that he personally did not cause money to be taken from plaintiff's and other patients' trust

8   accounts, either directly or by promulgation of policy, that he was not involved in developing the

9   policy concerning the fee charged for photocopies, that he did not review or approve the special

10  orders containing the policy concerning copy fees, that he did not participate in the

11  implementation of those special orders, and that he was unaware of plaintiff's challenge to the

12  policy in effect prior to being served with plaintiff's lawsuit.  While it is true that defendant's

13  delegation of responsibility to the deputy director "set in motion a series of acts by others," the

14  undersigned finds no evidence that defendant knew or reasonably should have known that such

15  delegation would cause others to inflict a constitutional violation on plaintiff and other state

16  hospital patients.

17         The undersigned also finds that the present record demonstrates that plaintiff has

18  prevailed on his federal claims and has obtained all appropriate relief requested in his complaint.

19         With regard to damages, plaintiff seeks a refund of all monies taken from his trust

20  account in excess of $.10 per page for copies, $50.00 for interest and loss of use of funds,

21  unspecified costs and fees in the amount of $1,500.00, punitive damages in the amount of

22  $2,500.00, and attorney fees and costs.  (Compl. at 7.)  Plaintiff's evidence demonstrates that on

23  August 25, 2004, his non-interest bearing trust account was charged $3.25 for copies.  (Pl.'s

24  Opp'n to Def.'s Mot. for Summ. J. at page electronically numbered 30 of 35.)  On October 6,

25  2004, plaintiff's trust account was credited  $.25 as a refund for the copy of one page plaintiff

26  had not requested.  (Id.)  The remaining $3.00 charge was for copying twelve pages at a rate of

$.25 per page.  On October 7, 2005, plaintiff's trust account was credited $2.01 as a refund for the monies previously taken from his trust account in excess of $.10 per page for copies, i.e., $.15 per page for twelve pages, for a total of $1.80.  (Id. at page electronically numbered 31 of 35.) The remaining $.21 constituted interest on the excess fees.

Plaintiff has thus received a refund of all monies taken from his trust account in excess of $.10 per page for copies, along with interest on the amount refunded.  Plaintiff has not argued or demonstrated that he is entitled to a larger sum of interest on the $1.80 that was refunded.  Nor has plaintiff demonstrated that he incurred any additional costs or fees.  Plaintiff has proceeded pro se and in forma pauperis and therefore has not incurred attorney fees or court costs.

Plaintiff's request for punitive damages is based on a conclusory allegation that defendant Mayberg used the authority of his office to take money from persons in his custody and control.  Punitive damages may be awarded in a § 1983 suit "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Smith v. Wade, 461 U.S. 30, 56 (1983). Put another way, punitive damages may be awarded in a § 1983 case if the defendant's conduct was malicious, oppressive, or in reckless disregard of the plaintiff's rights.  Dang v. Cross, 422 F.3d 800, 807-09 (9th Cir. 2005).  "An act or omission is oppressive . . . 'if done in a manner which injures or damages or otherwise violates the rights of another person with unnecessary harshness or severity as by misuse or abuse of authority or power or by taking advantage of some weakness or disability or the misfortunes of another person.'"  422 F.3d at 809 (quoting Fountila v. Carter, 571 F.2d 487, 493 (9th Cir. 1978)).  Cf. Keller v. City of Stockton, No. CIV S-04-1325 LKK DAD, 2006 WL 2051043, at *2-3 (E.D. Cal. July 20, 2006) (denying the defendants' motion for judgment as a matter of law on the issue of punitive damages where the record reflected that the defendants were aware of state-mandated procedures and standards that they were obligated to follow but failed to follow).  The undersigned finds that plaintiff has not

17

1   alleged conduct by defendant that was motivated by evil motive or intent, reckless or callous

2   indifference to federally protected rights, or oppressive conduct.

3           With regard to injunctive relief, plaintiff seeks an injunction requiring the

4   Department to cease charging a copy fee in excess of $.10 per page and an injunction requiring

5   the Department to implement all rules and regulations in accordance with state law.  (Compl. at

6   7.)  The request for an injunction regarding the copy fee is moot.  By Special Order No. 501.03,

7   effective July 29, 2005, the department changed the copying fee from $.25 per page to $.10 per

8   page, and the special order remains in effect at this time.  When a prisoner or a detainee seeks

9   injunctive relief concerning the facility where he is confined, his claims for such relief become

10  moot when he is no longer subjected to the conditions that gave rise to the claims.  See Weinstein

11  v. Bradford, 423 U.S. 147, 149 (1975); Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995).

12  Plaintiff's request for an injunction requiring the Department to cease charging a copy fee in

13  excess of $.10 per page was rendered moot by the Department's revision of Special Order No.

14  501.02 to charge a copy fee of $.10 per page.

15          Plaintiff's request for an injunction requiring the Department to implement all

16  rules and regulations in accordance with state law exceeds the scope of the federal claims alleged

17  in this action and raises only state law issues.  See Toussaint v. McCarthy, 926 F.2d 800, 801

18  (9th Cir. 1990) (a federal court's injunction directing a state agency to comply with constitutional

19  standards must not require more of state officials than is necessary to assure their compliance

20  with the United States Constitution).

21          In light of the fact that no relief remains to be granted on plaintiff's federal claims,

22  the undersigned will recommend that defendant's motion for summary judgment be granted, that

23  this court decline to exercise jurisdiction over plaintiff's state law claims concerning the

24  Administrative Procedures Act, and that all state law claims be dismissed without prejudice.  See

25  28 U.S.C. § 1367(c).

26  /////

PLAINTIFF'S ADDRESS

On March 10, 2006, plaintiff filed a notice of change of address stating that he is temporarily held at the West Valley Detention Center in Rancho Cucamonga.  The notice does not indicate the anticipated length of plaintiff's temporary detention, and plaintiff has not filed a further notice of change of address or any other document since March 10, 2006.  The Rancho Cucamonga address provided by plaintiff on March 10, 2006, is plaintiff's current address of record.

Plaintiff previously failed to file a timely notice of change of address from the West Valley Detention Center back to Atascadero State Hospital.  Plaintiff was cautioned that future changes of address must be reported promptly and properly in accordance with the court's order filed November 23, 2004, and Local Rule 83-182(f).  (See Order filed Aug. 19, 2005, at 3.) The docket reflects that a notice of appearance filed by new counsel for defendant on July 12, 2006, was first served on plaintiff at the West Valley Detention Center and was subsequently served on plaintiff at Atascadero State Hospital.  In an abundance of caution, the court will direct the Clerk to serve these findings and recommendations on the pro se plaintiff at both his address of record and at Atascadero State Hospital.

In accordance with the above, IT IS HEREBY ORDERED that the Clerk shall serve this order and findings and recommendations on plaintiff at his address of record at the West Valley Detention Center and at his previous address of record at Atascadero State Hospital;

IT IS RECOMMENDED that:

1.  Defendant's January 24, 2006 motion for summary judgment be granted with regard to plaintiff's federal claims;

2.  Plaintiff's supplemental state law claims be dismissed without prejudice; and

3.  This action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fifteen**

days after being served with these findings and recommendations, any party may file and serve

written objections with the court.  A document containing objections should be titled "Objections

to Magistrate Judge's Findings and Recommendations."  Any reply to objections shall be filed

and served within **ten** days after service of the objections.  The parties are advised that failure to

file objections within the specified time may, under certain circumstances, waive the right to

appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 18, 2006.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:13
hubb2256.57